IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ALPER OZLER**, individually and as owner of **NATURAL FOOD & BEVERAGE, LLC**       Plaintiffs,<br><br>v.<br><br>**PLA LOGISTICS, INC.**, et al.       Defendants. | Civil No. 5:24-cv-04926-JMG |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                       February 3, 2025

### I.      OVERVIEW

Alper Ozler ("Plaintiff"), individually and as owner of Natural Food & Beverage, LLC ("NFB"), filed a seven-count Second Amended Complaint ("SAC" or "ECF No. 13") against Defendants PLA Logistics, Inc. ("PLA") and Takata Trans, Inc. ("Takata") (collectively "Defendants"), on November 4, 2024. Defendants now attack Plaintiff's SAC for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Plaintiff alleges breach of contract (Counts I-II), intentional and negligent misrepresentation (Counts III-IV), promissory estoppel (Count V), unjust enrichment (Count VI), and punitive damages (Count VII)—each against both Defendants. Plaintiff has adequately pled his claims, and accordingly Defendants' Motion to Dismiss for Failure to State a Claim will be denied.

### II.     FACTUAL & PROCEDURAL BACKGROUND

Plaintiff brings claims for breach of contract and various torts against Defendants. The Court recites the facts as Plaintiff alleges in his Second Amended Complaint and is bound to take Plaintiff at his word—only for the purposes of adjudicating this Motion. *See McTernan v. City of*

*York*, 577 F.3d 521, 526 (3d Cir. 2009) ("[I]n deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991))).

Plaintiff was a driver for Defendant Takata. *See* ECF No. 13 at ¶ 21, and in the winter of 2022, he became interested purchasing a truck for his business, NFB. *See id.* at ¶ 22. Plaintiff expressed his interest to the owner of Takata, and he was informed that Takata had trucks available for purchase. *See id.* at ¶ 23. Plaintiff and the owner of Takata agreed to a financing agreement to purchase a truck. *See id.* at ¶ 25. This agreement required Plaintiff to make a down payment of $100,000.00, and then he would make monthly payments of $2,290.00 for a term of sixty months. *See id.* This amounts to a total of $237,400.00, inclusive of a 7.35% interest rate. *See id.*

On March 14, 2022, Defendant Takata presented Plaintiff with a drafted lease-to-own agreement ("the lease agreement"). *See id.* at ¶ 26; *see also* ECF No. 13 Ex. A. The document listed the parties to the lease agreement as NFB and PLA. *See* ECF No. 13 at ¶ 26; *see also* ECF No. 13 Ex. A at 1. The lease agreement "omitted any mention of the $100,000 down payment," but includes information as to the remainder of the payment plan. *See* ECF No. 13 at ¶ 27. Plaintiff, up to this point, had never interacted with PLA, and did not know why the lease agreement listed PLA as a party. *Id.* at ¶ 28. When he asked Takata's owner as to why PLA was listed on the lease agreement, he explained that PLA was owned and operated by Takata's owners' brother and that the truck would be managed by PLA. *See id.* at ¶ 29.

Plaintiff signed the agreement with PLA on April 14, 2022. *See id.* at ¶ 32. The vehicle at the center of the agreement was a 2022 Volvo truck with the Vehicle Identification Number 4V4NC9EH8NN60633 ("the truck"). *Id.* He paid for the down payment in two parts with one

check of $30,000 on April 1, 2022, made payable to Takata Trans, Inc. and a second check of $70,000 on April 26, 2022, also made payable to Takata. *See id.* at ¶¶ 31, 33.

Before Plaintiff signed the agreement, PLA entered into a Contractor Lease Agreement ("the contractor agreement") with Takata for the truck. Per the contractor agreement, Takata was "the sole motor carrier" that Plaintiff was able to utilize for the transportation of goods with the truck under the lease agreement. *See id.* at ¶ 36. Further, a term of the lease agreement was an authorization that Takata was permitted to "withhold specified expenses from any settlement proceeds for the transportation of goods owed to Plaintiff from the motor carrier and pay those expenses directly to PLA." *Id.* at ¶ 37.

Plaintiff avers that he did not know that the contractor agreement between PLA and Takata restricted "his ability to obtain work and earn a living operating the truck. *Id.* at ¶ 38. Plaintiff alleges that he was deceived by Defendants into signing the lease agreement, while Defendants knew that "Plaintiff would be bound to work solely for the Defendants, with Takata exerting complete control over the leased truck, siphoning all of Plaintiff's revenue, and retaining the power to terminate the agreement at any moment without notice." *Id.* at ¶ 39. Plaintiff believes that "Takata and PLA are the same business but separated to help orchestrate the scheme of defrauding truck drivers that are attempting to purchase trucks from Takata or PLA." *Id.* at ¶ 42. In furtherance of this point, Plaintiff notes that all of the payments he made under the lease were paid to Takata, despite the fact that the contract was formally between him and PLA. *See id.* at ¶ 43.

Once the lease agreement took effect, Plaintiff worked as a contractor for Takata, operating the truck, and "all payments for the lease-to-own agreement came out of [his] paychecks from Takata automatically." *See id* at ¶ 44. Plaintiff alleges that the contractor agreement, which he was not a party to, curtailed his ability to generate income as it limited him to only do work for Takata.

*See id.* at ¶ 45. "Takata controlled what loads Plaintiff was allowed to haul, for whom, to where and for how much." *Id.* at ¶ 46.

Further, Takata deducted expenses from his proceeds—these expenses included the monthly payment for the truck. *See id.* at ¶ 47. In the Spring of 2023, Plaintiff avers that he found that Takata deducted unauthorized expenses from his paychecks. *See id.* at ¶ 48. He further alleges that was paid less than he was due in dispatcher fees, and that Takata failed to provide proper documentation that would have proved this. *See id.* Plaintiff alleges that he was "effectively barred from seeking work with another trucking company or from accepting independent dispatches." *See id.* at ¶ 52. Plaintiff alleges that Defendants' arrangement was designed to limit Plaintiff's negotiating power and subject him to fraudulent practices without recourse. *See id.* at ¶ 53.

In April of 2024, Plaintiff asked Takata's employees for assistance in loading the truck with machines. *See id.* at ¶ 54. In response, Plaintiff claims that Takata retained $500 from Plaintiff's paycheck as payment for this assistance. *See id.* at ¶ 55. Plaintiff states that there was no agreement between him and Takata that he would pay for this assistance. *See id.* at ¶ 54. Plaintiff contested the charge to Takata, and in response, Plaintiff alleges that the owner of Takata informed him that he would no longer give Plaintiff any further work. *See id.* at ¶ 56. Though, he claims the $500 charge was rescinded. *See id.*

Plaintiff was informed by Takata that the lease agreement only permitted him to do work with Takata, and he would no longer be able to use the truck. *See id.* at ¶ 57. Moreover, Plaintiff claims that Defendants refused to permit Plaintiff to reclaim the truck. *See id.* at ¶ 56. This is even though he made every required payment under the lease agreement. *See id.* at ¶ 58. At the time at issue, Plaintiff claims that he had a remaining balance of $64,620.00 on the truck. *See id.* at ¶ 61.

On April 29, 2024, Plaintiff received a letter from PLA notifying him that he had not paid the payment due April 1, 2024. *See id.* at ¶ 62. This letter notified him that payment was required in ten days, or else the lease agreement would be terminated, and the truck would be repossessed. *See id*. The Defendants informed Plaintiff that they would no longer accept monthly payments from him per the agreement. *See id.* at ¶ 63. Instead, the Defendants demanded that Plaintiff pay them a sum exceeding the remaining balance left due on the truck. *Id.* When Plaintiff disputed this amount, he avers that Defendants refused to engage in any negotiations, terminated the lease and kept possession of the truck. *See id.* at ¶ 64. Plaintiff claims this runs in direct opposition to the lease agreement which allowed him the right to invoke a purchase option and purchase the truck "for the amount of Principal charges remaining on the Amortization Schedule." *See id.* at ¶¶ 65-66. Defendants repossessed the truck, even though Plaintiff maintains he never defaulted on the loan. *See id.* at ¶ 67.

Plaintiff filed his Complaint on September 17, 2024, *see* ECF No. 1, an Amended Complaint on October 10, 2024, *see* ECF No. 5, and the operative Second Amended Complaint on November 6, 2024. *See* ECF No. 13. Defendants filed a Motion to Dismiss Plaintiff's Second Amended Complaint on November 18, 2024. *See* ECF No. 15. Plaintiff responded in opposition on December 2, 2024. *See* ECF No. 16.

### III.  STANDARD OF REVIEW

Per Fed. R. Civ. P. 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

5

*Id*. (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). A court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Wheeler v. Wheeler*, 639 F. App'x 147, 149 (3d Cir. 2016) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)).

IV. **DISCUSSION & ANALYSIS**

   a. **Breach of Contract Claims (Counts I & II)**

First, Plaintiffs bring a claim of breach of contract against both Defendants. Plaintiff names PLA in Count I and Takata in Count II. "A cause of action for breach of contract must be established by pleading (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999).

Defendants argue that this claim fails at the second element because Plaintiffs have failed to show a breach by the Defendants. *See* Defs.' Br. in Opp. ("ECF No. 15-1") at 4-5. Plaintiff, however, argues that Defendants breached first by preventing him from being able to perform his duties under the contract. *See Rothrauff v. Sinking Spring Water Co.*, 14 A.2d 87, 89 (Pa. 1940) ("The suit is founded upon the principle that the prevention by a party to a contract of performance by the other party constitutes an actionable breach."); *see also Miles v. Metzger*, 173 A. 285, 217 (Pa. 1934) ("It is well settled, as a principle of fundamental justice, that, where one party to a contract is himself the cause of a failure of performance by the other party, he cannot take advantage of his own breach of the contract in doing, to prevent a recovery by the other party."). Plaintiff alleges that Defendants prohibited Plaintiff from performing any work for Takata, and

thus prevented him from making an income so that he could make the required payments under the lease agreement. *See* ECF No. 13 at ¶¶ 56-57.

Further, Plaintiff alleges that Defendants' breach of the contract permitted Plaintiff to cease further performance. *See 1228 Inv. Grp., L.P. v. Hub Grp., Inc.*, 635 F. Supp. 3d 381, 387 (E.D. Pa. 2022) ("When one party to a contract materially breaches, the counterparty's duty to perform is suspended." (citing *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 648 (Pa. 2009))). Plaintiff alleges that in April 2024, Defendants refused to accept any further monthly payments under the lease agreement, *see* ECF No. 13 at ¶ 63, and demanded an amount more than what was due for him invoke his purchase option on the truck. *See id.* He argues that these breaches discharged him from any further performance of the contract. Further, Plaintiff alleges that Defendants repossessed the truck despite Plaintiff maintaining that he never defaulted on the payment schedule in the lease agreement. *See id.* at ¶ 67.

In Plaintiff's SAC, he alleges a breach of the duty of good faith and fair dealing. *See* ECF No. 13 at ¶¶ 75-76. In Pennsylvania, "every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Kantor v. Hiko Energy, LLC*, 100 F. Supp. 3d 421, 429 (E.D. Pa. 2015) (citing *Somers v. Somers*, 613 A.3d 1211, 1213 (Pa. Super. Ct. 1992)). "This obligation extends only to the performance of those duties the parties have agreed to assume," and it "does not create independent substantive rights." *Id.* at 429-30. Other courts have referred to this duty as "an interpretive tool to determine the parties' justifiable expectations." *See Willies Re Inc. v. Hearn*, 200 F. Supp. 540, 551 (E.D. Pa. 2016) (citing *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 617 (3d Cir. 1995)). Beyond the purportedly concrete breaches of the agreement discussed above, the Court is guided by this implicit duty in finding that Plaintiff could demonstrate breach through his allegation that Defendants failed to permit him to

7

continue to use the truck to work after he had challenged the deduction of an allegedly unauthorized expense from his paycheck. *See* ECF No. 13 at ¶¶ 56-57. Plaintiffs' breach of contract claims will survive Defendants' motion.

### b. Intentional and Negligent Misrepresentation (Counts III & IV)

Next, Plaintiff alleges claims of misrepresentation, both intentional and negligent, against the Defendants. Before addressing whether these claims have been adequately pled, the Court must address Defendants' argument that these claims are barred by the gist of the action doctrine.

### i. The Gist of the Action Doctrine

The gist of the action doctrine "precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." *SpiriTrust Lutheran v. Wagman Contsr., Inc.*, 314 A.3d 894, 908 (Pa. Super. Ct. 2024) (quoting *Mirizio v. Joseph*, 4 A.3d 1073, 1079 (Pa. Super. Ct. 2010)). It "acts to foreclose tort claims: (1) arising solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim." *Reardon v. Allegheny Coll.*, 926 A.2d 477, 487 (Pa. Super. Ct. 2007). Contractual claims arise out of "breaches of duties imposed by mutual consensus agreements between particular individuals," whereas tort claims arise out of "breaches of duties imposed by law as a matter of social policy." *Id.* at 486-87 (citation omitted). So, "[w]hen a duty is created by contract, the gist of the action doctrine requires that a claim for a breach of that duty be brought in contract, not tort." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 217 (3d Cir. 2022) (citing *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 65 (Pa. 2014)).

8

Plaintiff's claims here are not barred by the gist of the action doctrine. Plaintiff alleges that he was deceived into entering the contract with Defendants. The Third Circuit has recognized that there is "a precontractual duty not to deceive through misrepresentation or concealment [that] exists independently of a later-created contract." *SodexoMAGIC*, 24 F.4th at 217 (citing *Moser v. DeSetta*, 589 A.2d 679, 682 (Pa. 1991)). Accordingly, Plaintiff's allegations of pre-contractual misrepresentation sound in the world of tort law, rather than a breach of a duty contained in the parties' contract. *See id.* at 217 ("The gist of the action doctrine does not apply here because [plaintiff's] fraudulent inducement claim does not depend on the breach of a contractual duty."). Plaintiff alleges that Defendants violated a pre-contractual duty, and this duty exited outside of the contract that they subsequently entered. Accordingly, the gist of the action doctrine does not apply to bar Plaintiff's tort claims.

### ii. Intentional Misrepresentation or "Fraud"

To successfully allege a claim of fraud, or intentional misrepresentation, a plaintiff must show: "(1) A representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and, (6) the resulting injury was proximately caused by the reliance." *Bellardine v. Ross*, 2018 WL 3642223, at *5 (E.D. Pa. Aug. 1, 2018) (quoting *Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999)).

Also, claims of fraud are subject to a heightened pleading standard under Fed. R. Civ. P. 9(b). The rule provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "The purpose of Rule 9(b) is to provide notice of the 'precise misconduct' with which the defendants are charged and to prevent false or unsubstantiated charges." *Rolo v. City Inv. Co. Liquidating Trust*, 155 F.3d 644, 658 (3d

9

Cir. 1998). But, the Third Circuit has instructed that courts should "apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants." *Id.* (citing *Christidis v. First Penn. Mortg. Trust*, 717 F.2d 96, 99 (3d Cir. 1983)). Plaintiffs are not required by the rule to "plead 'date, place or time' of the fraud, so long as they use an 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Id.* (quoting *Seville Indus. Mach. v. Southmost Mach.*, 742 F.2d 786, 791 (3d Cir. 1984)). Defendants argue that Plaintiff has failed to meet this heightened pleading standard.

Plaintiff alleges that he was affirmatively misled in entering the lease agreement. Plaintiff avers in his SAC that when he was first presented with the lease agreement, it listed the parties to the agreement as NFB (plaintiff's business) and PLA. *See* ECF No. 13 at ¶ 26. He alleges that at this point he was unaware what PLA was, and even denies ever having heard of the business. *See id.* at ¶ 28. Plaintiff alleges he was unaware of the contractor agreement between Takata and PLA. *See id.* at ¶ 38. He was unaware that Takata was the sole motor carrier for which Plaintiff could use the truck to haul goods. *See id.* at ¶ 36. Plaintiff alleges that Defendants did not tell him that he "would be bound to work solely for the Defendants, with Takata exerting complete control over the leased truck, siphoning all of Plaintiff's revenue, and retaining the power to terminate the [lease] agreement at any moment without notice." *Id.* at ¶ 39. Defendants concealed the contractor agreement between them to induce Plaintiff to sign the lease agreement. *See id.* at ¶ 92. Plaintiff alleges that this deception were intended to cause Plaintiff to "fall[ ] behind on payments which would allow the repossession of the 2022 Volvo truck as well as retention of all moneys paid." *Id.* at ¶ 94. The Court finds these allegations, as pled, have met the required, heightened pleading standard so that Defendants are sufficiently on notice.

10

Plaintiff's fraud claim sounds in fraudulent concealment. "[C]oncealment can be a sufficient basis for a finding that a party engaged in fraudulent conduct, provided that the other earlier elements of fraud are established." *Mancini v. Morrow*, 458 A.2d 580, 585 (Pa. Super. Ct. 1983); *see also Duquesne Light Co.*, 66 F.3d at 612 ("[F]raud consists in anything calculated to deceive, whether it be by speech or silence … It is any artifice by which a person deceived to his disadvantage." (cleaned up)). However, "mere silence is not sufficient in the absence of a duty to speak." *Wilson v. Donegal Mut. Ins. Co.*, 598 A.2d 1310, 1316 (Pa. Super. Ct. 1991). There are several, limited circumstances in which a party to a contract has a duty to speak or a duty to disclose, and one such circumstance is "where one party is the only source of information to the other party or the [information is] not discoverable by other reasonable means." *See N. Penn Towns, LP*, 554 F. Supp. 3d at 705. On the face of the SAC, the Court will assume for the purposes of adjudicating Defendants' Motion to Dismiss that Plaintiffs' allegations raise such a duty.[1] Plaintiff has alleged that he was unaware of a clandestine agreement between PLA and Takata that placed restrictions on his use of the truck. *See* ECF No. 13 at ¶ 38. It is a fair inference to make at this stage of the litigation that the only means by which Plaintiff could have uncovered the existence of a contract between the Defendants restricting the use of the truck is through the Defendants themselves. Plaintiff's fraud claim will survive Defendants' Motion to Dismiss.

### iii. Negligent Misrepresentation

There are four elements to a negligent misrepresentation claim that a plaintiff must sufficiently allege: "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induct another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the

---

[1] The parties may further argue as to whether this duty, or a separate duty of disclosure, applies in drafting their dispositive motions.

misrepresentation." *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999). "Negligent misrepresentation differs from intentional misrepresentation in that the speaker does not have to know that his words are untrue, but instead has not made a reasonable investigation of the truth of those words." *Glanton*, 958 F. Supp. at 1039. The Court will allow this claim to proceed for the same reasons as Plaintiff's intentional misrepresentation claim, as explained above.

### c. Promissory Estoppel & Unjust Enrichment (Counts V & VI)

Next, Plaintiff brings claims of promissory estoppel and unjust enrichment. Pennsylvania recognizes the doctrine of promissory estoppel. *See Matarazzo v. Millers Mut. Grp., Inc.*, 927 A.2d 689, 692 (Pa. Commw. Ct. 2007) (citing *Thatcher's Drug Store of W. Goshen, Inc. v. Consolidated Supermarkets, Inc.*, 636 A.3d 156 (Pa. 1994)). This doctrine, also known as "detrimental reliance," *see id.*, recognizes that "the detrimental reliance of the promise creates the consideration necessary for the formation of a contract, the breach of which is actionable." *Id.* (citing *Travers v. Cameron Cnty. Sch. Dist.*, 544 A.3d 547 (Pa. Commw. Ct. 1988)). To state a claim for promissory estoppel, a plaintiff must allege: "(1) the promisor made a promise that is should have reasonably expected would induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only be enforcing the promise." *PMC Prop. Grp., Inc. v. Apogee Wausau Grp., Inc.*, --- F. Supp. 3d ----, 2024 WL 4543046, at *5 (Oct. 22, 2024 E.D. Pa.) (citing *Sullivan v. Chartwell Inv. Ps., LP*, 873 A.2d 710, 717-18 (Pa. Sup. Ct. 2005)).

Pennsylvania also recognizes the doctrine of unjust enrichment. "Where unjust enrichment is found, the law implies a contract, which requires the defendant to pay to the plaintiff the value of the benefit conferred." *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999). The elements of an unjust enrichment claim are: "(1) benefits conferred on defendants by plaintiff; (2)

appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999). "In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched." *Id.* at 1204. Generally, "under Pennsylvania law, 'the quasi-contractual doctrine of unjust enrichment is unapplicable when the relationship between the parties is founded on a written agreement or express contract.'" *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987) (quoting *Benefit Trust Life Ins. Co. v. Union Nat. Bank*, 776 F.2d 1174, 1177 (3d Cir. 1985)).

At this point in the litigation, these claims will survive Defendants' Motion to Dismiss. Plaintiff has alleged that Defendants retained monies that were "beyond the subject matter of the parties' contract." *Carlisle Med. Grp., LLC v. Salah Eldohiri, M.D.*, No. 1:15-cv-2367, 2016 WL 2736061, at *3 (M.D. Pa. May 11, 2016); *cf Hershey Foods Corp.*, 828 F.2d at 999 (affirming dismissal of unjust enrichment claim when services were performed "within the scope" of an express agreement). Plaintiff's SAC contains allegations about the retention of the down payment, which is alleged not to have been included in the lease agreement. *See* ECF No. 13 at ¶¶ 25, 27. The Court also keeps these active at this point because while the lease agreement is clearly between Plaintiff and PLA, it remains to be seen whether there was an express contract between Plaintiff and Takata. Count VI of Plaintiff's Second Amended Complaint survives.

### d. Punitive Damages (Count VII)

Finally, Plaintiff claims punitive damages in Count VII. In Pennsylvania, punitive damages "are appropriate where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." *Dwyer v. Ameriprise Fin., Inc.*, 313 A.3d 969, 980-81 (Pa. 2024). At this

13

stage of the litigation, the Court declines to dismiss this claim for punitive damages because Plaintiffs have adequately pled Defendants' conduct that could be considered to meet these criteria, and thus give rise to a punitive damages award.

## V.     CONCLUSION

For the foregoing reasons, the Court denies Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge